UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | |
|---|---|
| IN RE: | : Case No.:  12-30353 (AMN) |
| BENSON A. SNAIDER and | : |
| MARSHA LEVITT SNAIDER, | : |
| *Debtors* | : Chapter 7 |
| | : |
| | : |
| BENSON A. SNAIDER | : |
| *Movant* | : |
| v. | : |
| | : |
| STATE OF CONNECTICUT CLIENT | : |
| SECURITY FUND COMMITTEE, | : |
| STATE OF CONNECTICUT | : |
| DEPARTMENT OF ADMINISTRATIVE | : |
| SERVICES, and ACCOUNT | : |
| CONTROL TECHNOLOGY, INC. | : |
| *Respondents* | : |
| | : RE: ECF 94 |

**MEMORANDUM OF DECISION AND ORDER
DENYING MOTION FOR CONTEMPT OF DISCHARGE INJUNCTION**

APPEARANCES

*Movant:*

*Benson A. Snaider*
*597C Sioux Lane*
*Stratford, CT 06614*
    *Proceeding Pro Se*

*Respondents:*

*Denise S. Mondell*
*Assistant Attorney General*
*State of Connecticut*
*55 Elm Street P.O. Box 120*
*Hartford, CT 06141-0120*
    *For Department of Admin. Services*

*Daniel P. Elliot*
*Barclay Damon, LLP*
*645 Long Wharf Drive 9th Floor*
*New Haven, CT 06511*
    *For Account Control Technology, Inc.*

Before the court is the question of whether a restitution order entered in a state criminal proceeding is a dischargeable obligation under 11 U.S.C. § 523(a)(7).  If so, Benson Snaider (the "Debtor") asks the court to hold in contempt the State of Connecticut Client Security Fund Committee (the "Client Security Fund"), the State of Connecticut Department of Administrative Services (the "Department of Administrative Services"), and Account Control Technology, Inc. ("ACT")[1] (the "Respondents," collectively) for attempting to enforce a restitution order (the "Restitution Order") entered against the Debtor in violation of the discharge injunction set forth in 11 U.S.C. § 524.  *See,* ECF No. 94.  On August 23, 2018, the court reopened the Debtor's case[2] to consider the merits of his position.  ECF No. 105.  Because I conclude the Restitution Order is a non-dischargeable obligation, the Debtor is not entitled to relief.

## I.    JURISDICTION AND NATURE OF PROCEEDING

The United States District Court for the District of Connecticut has jurisdiction over this case by virtue of 28 U.S.C. § 1334(b).  This court derives its authority to hear and determine this matter on reference from the District Court for the District of Connecticut pursuant to 28 U.S.C. §§ 157(a), (b)(1), and the District Court's General Order of Reference dated September 21, 1984.  This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (I).  This memorandum constitutes the court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure,

---

[1]     ACT is a private collections agency retained by the Department of Administrative Services.  ECF No. 100.

[2]     Pursuant to 11 U.S.C. § 350(b), a case may be reopened to "accord relief to the debtor."  11 U.S.C. § 350(b).  Fed.R.Bankr.P. 4007 provides, "A debtor or any creditor may file a complaint to obtain a determination of the dischargeability of any debt."  Fed.R.Bankr.P. 4007(a).  Regarding timing, "A complaint other than under § 523(c) may be filed at any time.  A case may be reopened without payment of an additional filing fee for the purpose of filing a complaint to obtain a determination under this rule."  Fed.R. Bankr. P. 4007(b).

applicable in this proceeding pursuant to Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure.

## II.    FACTUAL BACKGROUND – UNDISPUTED FACTS

The following facts are undisputed.

Long ago, the Debtor represented Minchin Buick, Inc., ("Minchin") as its attorney in an eminent domain proceeding (the "Eminent Domain Case") against the City of Stamford.  ECF No. 109 ¶¶ 2, 3.  The City of Stamford initially offered Minchin $800,000.00 for a condemned piece of property, and that amount was deposited in the Debtor's client fund account until the case's resolution.  ECF No. 109 ¶ 3.  After seven years of litigation and a four-day trial in 2011, the Debtor obtained an award of $1,143,360.00 for Minchin, plus costs and pre-judgment interest, and earned a contingency fee of $273,860.33.  ECF No. 109 ¶ 4.  On July 6, 2011, the Debtor delivered to Minchin a check in the amount of $469,553.53—the difference between the award of $1,143,360.00 and the $800,000.00 already received—but he no longer possessed the $800,000.00.  ECF No. 109 ¶ 5.

In November of 2011, Minchin sued the Debtor in the Connecticut Superior Court for recovery of the $800,000.00 (the "Civil Case"); during the same month, the Debtor was charged with first-degree larceny (the "Criminal Case") in connection with the missing funds.  ECF No. 109 ¶¶ 6, 14.  On February 16, 2012 (the "Petition Date"), amid the ongoing Civil and Criminal Cases, the Debtor and his wife jointly filed the instant Chapter 7 bankruptcy case (the "Bankruptcy Case") and listed an $800,000.00 debt to Minchin in their bankruptcy schedules.  ECF No. 109 ¶ 1; *see also* ECF No. 1.

Two months later, on April 11, 2012, the Debtor pleaded guilty in the Criminal Case. ECF No. 109 ¶ 15. On the same date, Judge Richard F. Comerford of the Connecticut Superior Court imposed a five-year suspended sentence and five years' probation and ordered the Debtor to pay restitution in an unspecified amount for Minchin's lost out-of-pocket expenses. ECF No. 109 ¶ 15. On May 21, 2012, Minchin filed a claim for reimbursement with the Client Security Fund, a respondent here.[3] ECF No. 109 ¶ 7. Due to an unresolved question of whether the Debtor was entitled to attorney's fees for his efforts in the Eminent Domain Case, the Client Security Fund did not reimburse Minchin's claim at that time. ECF No. 109 ¶ 13.

On May 30, 2012, the Debtor received a discharge in the Bankruptcy Case without objection. ECF No. 109 ¶ 10. On November 28, 2012, counsel for the Debtor filed a notice of bankruptcy discharge in the Civil Case. ECF No. 109 ¶ 12. On January 13, 2013, Minchin ended the Civil Case and instead filed a "Motion for Determination of Restitution" in the Criminal Case on February 26, 2013. ECF No. 109 ¶ 16. At a hearing on Minchin's motion held April 8, 2013, Judge Gary White raised jurisdictional and standing concerns and marked the motion off.[4] ECF No. 109-5.

On May 15, 2013, the Court Support Services Division, Office of Adult Probation filed a motion for modification in the Criminal Case to clarify the restitution amount owed by the Debtor. ECF No. 109 ¶ 18. During a hearing on July 29, 2013, Judge Comerford

---

[3]    Pursuant to authority granted by Conn. Gen. Stat. § 51-81d(a), the rules of the Connecticut Superior Court provide for the establishment of the Client Security Fund "to reimburse claims for losses caused by the dishonest conduct of attorneys admitted to the practice of law in this state and incurred in the course of an attorney-client relationship." Conn. Gen. Stat. § 51-81d(a)(1)(A).

[4]    To "mark a motion off" is a term of art used in Connecticut state court meaning to defer consideration of a motion to a later date, if at all. *See Short Calendar and the Marking Process Quick Reference Guide*, https://www.jud.ct.gov/external/super/E-Services/efile/shortcal_quickref.pdf (last visited Nov. 15, 2019).

fixed restitution at $536,000.00.[5]  ECF No. 109 ¶ 19.  On September 12, 2013, the Client Security Fund paid Minchin $536,000.00.  ECF No. 109 ¶ 20.

On July 14, 2014, Minchin received a dividend of $18,705.12 from the bankruptcy estate, and the Bankruptcy Case closed on August 29, 2014.[6]  ECF No. 109 ¶¶ 23, 24.

On June 23, 2015, the Connecticut Support Services Division notified the Debtor of his obligation to begin making monthly payments of $29,777.78 toward full repayment of the $536,000.00 restitution amount by January 11, 2017.  ECF No. 109 ¶ 25.  Almost two years later, the Debtor appeared before Judge White on April 20, 2017, at a probation violation hearing in the Criminal Case to address the Debtor's failure to make restitution payments.  ECF No. 109 ¶¶ 26, 27. During the hearing, Judge White terminated the Debtor's probation, contingent on payment of $2,000.00 to Court Support Services Division, Office of Adult Probation.  ECF No. 109 ¶ 28. On the same date, pursuant to Conn. Gen. Stat. § 53-a-28, Judge White issued a written restitution order in the Criminal Case (the "Restitution Order"), payable to the Client Security Fund.  ECF No. 109 ¶ 29.

On May 10, 2017, the Department of Administrative Services—one of the respondents—demanded payment of the $536,000.00 on behalf of the Client Security Fund based on the Restitution Order.  ECF No. 109 ¶ 32.

---

[5]     Judge Comerford reached the $536,000.00 sum by reducing the $800,000.00 amount of embezzled funds by $130,000.00 of restitution already paid pursuant to a pre-judgment attachment and $134,000.00 in attorney's fees earned by the Debtor.  ECF No. 109 ¶ 19.

[6]     Minchin initially filed a proof of claim for $670,000.00.  ECF No. 109 ¶ 11.  The Chapter 7 Trustee later objected to the proof of claim amount after the $536,000.00 figure was set in the Criminal Case.  ECF No. 109 ¶ 21. On April 9, 2014, this court sustained the Trustee's objection and allowed Minchin's claim in the amount of $536,000.00, plus $45,000.00 paid to the Trustee by Minchin under a settlement agreement in a related adversary proceeding.  ECF No. 109 ¶ 22.

### III.   ADDITIONAL PROCEDURAL HISTORY

Four months after the demand of payment, on September 19, 2017, the Debtor filed a complaint in the United States District Court for the District of Connecticut against the Respondents.[7]  Case No. 3:17-CV-01564, Dkt. No. 1.  On November 19, 2017, the Debtor amended his complaint, asserting a violation of the discharge injunction and the unenforceability of the Restitution Order.  Case No. 3:17-CV-01564, Dkt. No. 20.  On January 3, 2018, the Client Security Fund and the Department of Administrative Services filed a motion to dismiss the amended complaint; ACT separately moved to dismiss the amended complaint on the same date.  Case No. 3:17-CV-01564, Dkt. Nos. 33, 35.

On June 6, 2018, United States District Judge Janet C. Hall dismissed the Debtor's claims for lack of subject matter jurisdiction.  *See, Snaider v. Account Control Tech., Inc.*, No. 3:17-CV-1564 (JCH), 2018 WL 2725447 (D. Conn. June 6, 2018).   Judge Hall concluded the bankruptcy court was the appropriate forum for determining whether the Respondents had violated the discharge injunction and dismissed the Debtor's claim about the state court Restitution Order's alleged unenforceability on *Rooker-Feldman* grounds.  *Snaider*, 2018 WL 2725447 at *4–9.

On July 11, 2018, the Debtor returned to this court and filed the instant motion seeking to reopen the Bankruptcy Case and seeking sanctions against the Respondents for violations of the discharge injunction.[8]  ECF No. 94.  On July 30, 2018, the Client

---

[7]      Facts relating to the District Court proceeding are not included in the parties' Joint Statement of Undisputed Facts, filed at ECF No. 109.  Nonetheless, for clarity and completeness, this court takes judicial notice of the docket in Case No. 3:17-CV-01564 pursuant to F.R.E. 201.

[8]      The Debtor's first attempt to file a motion to reopen, ECF No. 90, failed to follow the contested matter procedure as established by local rule.  *See,* D. Conn. Bankr. L. R. 9014-1.

Security Fund and the Department of Administrative Services filed an objection to the Debtor's motion. ECF No. 96. On August 1, 2018, ACT filed an objection. ECF. No. 100. The Debtor filed a reply to the objections on August 14, 2018. ECF No. 103.

On August 22, 2018, this court held a hearing on the Debtor's motion to reopen. Following the hearing, the court granted the Debtor's motion for the limited purpose of adjudicating the alleged violation of the discharge injunction set forth in § 524 of the Bankruptcy Code. ECF No. 105. The court ordered statements of disputed facts, as well as briefing on the following: (1) the applicability to the facts present here of *Kelly v. Robinson*, 479 U.S. 36 (1986), and its progeny; (2) the relevance of the timing of the Restitution Order, the initiation of the Bankruptcy Case, and the bankruptcy discharge to the relief sought by the Debtor; and (3) any additional arguments in support of the parties' respective positions. ECF No. 107.

## IV.   DISCUSSION

Consistent with his arguments before the District Court and his assertions during the August 23, 2018 hearing, the Debtor now asks this court to conclude the Restitution Order constitutes a discharged debt, now unenforceable against him. ECF Nos. 94, 112. Alternatively, the Debtor proposes the Restitution Order is an invalid "abuse of process." ECF Nos. 94, 112. I have considered both arguments and, for the reasons developed below, both are unavailing.[9]

---

[9]   An interesting issue the parties find immaterial is the effect, if any, of the post-Petition Date guilty plea on the dischargeability of the Restitution Order. Because this decision ultimately rests on other grounds, the court need not address the question of timing.

1. <u>Dischargeablity of a State Criminal Restitution Order</u>

The bankruptcy discharge secures a debtor's "fresh start" by enjoining "the commencement or continuation of an action . . . to collect, recover or offset any such debt as a personal liability of the debtor."  11 U.S.C. § 524(a)(2); *see, Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 381 (2007)("[T]he Bankruptcy Code is intended to give a "fresh start" to the 'honest but unfortunate debtor.'").  A bankruptcy court "may hold a creditor in civil contempt for violating a discharge order if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct."  *Taggart v. Lorenzen*, 139 S.Ct. 1795, 1799 (2019)(emphasis in original); *see also, In re Sanchez*, 941 F.3d 625, 628 (2d Cir. 2019)(per curiam)(holding "that bankruptcy courts, like Article III courts, possess inherent sanctioning powers").

In a bankruptcy proceeding under Chapter 7 of the Bankruptcy Code, an order of discharge "discharges the debtor from all debts that arose before the date of the bankruptcy filing."  11 U.S.C. § 727(b).  However, certain debts are not discharged, including "any debt . . . (7) to the extent such debt is for a fine, penalty or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss. . . ."  11 U.S.C. § 523(a).

Presently, the Debtor argues the Restitution Order is "compensation for actual pecuniary loss" sustained by Minchin and therefore is not within the ambit of § 523(a)(7). In response, the Respondents rely on the Supreme Court's decision in *Kelly v. Robinson*, 479 U.S. 36 (1986).

In *Kelly*, the Supreme Court considered whether a discharged Chapter 7 debtor continued to be liable for the balance of a pre-bankruptcy restitution order entered in a

state criminal proceeding. *Kelly*, 479 U.S. at 38–40. The Supreme Court held the restitution order non-dischargeable, stating, "we hold that § 523(a)(7) preserves from discharge any condition a state criminal court imposes as part of a criminal sentence." *Kelly*, 479 U.S. at 50. In reaching its holding, the *Kelly* Court examined the pre-1978 "established judicial exception to discharge for criminal sentences"; the nature and purpose of restitution; and its own "deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings." *Kelly*, 479 U.S. at 46–53. Though restitution may "resemble a judgment 'for the benefit of' the victim," the Court observed that restitution "is concerned not only with punishing the offender, but also with rehabilitating him." *Kelly*, 479 U.S. at 52. Because restitution furthers a state's penal goals, it is both "for the benefit of a governmental unit" and distinct from "compensation for actual pecuniary loss." *Kelly*, 479 U.S. at 52–53 ("The criminal justice system is not operated primarily for the benefit of victims, but for the benefit of society as a whole."); *see also, Mills v. Caisse (In re Caisse)*, 568 B.R. 6, 17 (Bankr. S.D.N.Y. 2017)("In short, a criminal judgment that includes restitution is always for the benefit of a governmental unit because it vindicates the governmental unit's interest in the punishment and the rehabilitation of the defendant.").

While the Debtor's argument centers around his contention that the Restitution Order reflects compensation for the actual pecuniary loss sustained by Minchin, *Kelly* explicitly rejects the idea that restitution is compensation for the victim. Restitution "may be calculated by reference to the amount of harm the offender has caused," but it does not follow that restitution is compensation for pecuniary loss. *Kelly*, 479 U.S. at 52. *Kelly* further explains:

9

> Although restitution does resemble a judgment "for the benefit of" the victim, the context in which it is imposed undermines that conclusion. The victim has no control over the amount of restitution awarded or over the decision to award restitution. Moreover, the decision to impose restitution generally does not turn on the victim's injury, but on the penal goals of the State and the situation of the defendant.

*Kelly*, 479 U.S. at 52.

Subsequent case law has not restricted *Kelly's* straightforward holding. In this Circuit, the Bankruptcy Court for the Eastern District of New York has observed, "*Kelly* and its progeny make it abundantly clear that in general, restitution orders as a class are excepted from discharge." *U.S. v. Gelb (In re Gelb)*, 187 B.R. 87, 92 (Bankr. E.D.N.Y. 1995); *see also, Grant v. U.S. Dep't of Defense (In re Grant)*, No. 16-02019 (JJT), 2017 WL 2960206 at *5 (Bankr. D. Conn. July 10, 2017)("A fine or condition imposed as part of the penal purpose of a criminal sentence is nondischargeable."); *State of Connecticut Dep't of Labor v. Davis (In re Davis)*, No 15-03009 (JAM), 2017 WL 1200921 at *7 (Bankr. D. Conn. Mar. 30, 2017) ("*Kelly* stands for the proposition that obligations that are primarily penal in nature are excepted from discharge, regardless of whether the obligation is labeled a 'fine, penalty, or forfeiture.'"). More recently, the Bankruptcy Court for the Southern District of New York rejected a debtor's argument that a restitution order was dischargeable as compensation for actual pecuniary loss sustained through a debtor-operated Ponzi scheme. *Caisse*, 568 B.R. at 18–19. In a thorough opinion, the *Caisse* court noted the "continuing vitality of *Kelly's* broad holding" due to Congress's legislative inaction and emphasized that, in *Kelly*, "the Supreme Court 'went out of its way . . . to stress that it posed no serious threat to criminal restitution orders imposed by a state.'" *Caisse*, 568 B.R. at 18–19 (quoting *In re Thompson*, 418 F.3d 362, 366 (3d Cir. 2005)).

The *Kelly* Court's emphasis on the rehabilitative aims of restitution is consistent with Connecticut law.  As articulated by the Connecticut Supreme Court, "[r]estitution simply serves the state's rehabilitative interest in having a defendant take responsibility for his conduct through the act of making the victim whole." *State v. Silas S.*, 301 Conn. 684, 693 (Conn. 2011) (quoting *State v. Fowlkes*, 283 Conn. 735, 744 (Conn. 2007)); *see also, State v. Pieger*, 240 Conn. 639, 650 (Conn. 1997)(quoting *Kelly's* observation that restitution is "an effective rehabilitative penalty because it forces the defendant to confront, in concrete terms, the harm his actions have caused").

The Debtor nonetheless argues that courts have interpreted *Kelly* as "pertaining only to restitution orders imposed as a criminal penalty or fine payable to a governmental agency and not imposed as compensation to the crime victim for loss due to criminal activity."  ECF No. 112.  In support of his position, the Debtor cites the following cases: *Hughes v. Sanders*, 469 F.3d 475 (6th Cir. 2006); *Matter of Towers*, 162 F.3d 952 (7th Cir. 1998); *Scheer v. State Bar of California (In re Scheer)*, 819 F.3d 1206 (9th Cir. 2016); *In re Rashid*, 210 F.3d 201 (3d Cir. 2000); and *Heitmanis v. Rayes (In re Rayes)*, 496 B.R. 449 (Bankr. E.D. Mich. 2013).  None of the cases cited originate in the Second Circuit, and as ACT rightly points out, each is inapposite.

The Sixth Circuit decision *Hughes v. Sanders* and the Seventh Circuit decision *Matter of Towers* both address restitution orders entered in civil proceedings.  *Hughes* concerned a civil sanction issued to discipline a party for non-criminal litigation conduct, to be paid to a private litigant for damages, litigation costs, and attorney's fees.  *Hughes*, 469 F.3d at 479.  In *Towers*, the Seventh Circuit Court of Appeals considered a restitution order resulting from a civil suit brought by the Illinois Attorney General under the Illinois

Consumer Fraud and Deceptive Business Practices Act.  *Towers*, 162 F.3d at 953.

Because the order intended the restitution to be paid to the victims of the consumer fraud,

the *Towers* court could not find that "any governmental unit receives a financial benefit

from the restitution" as ordered, and the court held the civil restitution order dischargeable.

*Towers*, 162 F.3d at 956.  Significantly, neither decision disputes *Kelly's* applicability to

<u>criminal</u> restitution orders.  *See, Hughes*, 469 F.3d at 478 ("*Kelly* applies narrowly to

criminal restitution payable to a governmental unit."); *Towers*, 162 F.3d at 954

("*Kelly* dealt with a criminal restitution order, and as we have mentioned its animating

concern was limited to criminal cases.").

In *Scheer v. State Bar of California*, the Court of Appeals for the Ninth Circuit faced

facts superficially resembling those here.  In *Scheer*, the debtor—an attorney—failed to

return an unearned retainer to a former client.  *Scheer*, 819 F.3d at 1208.  Then, unlike

here, the matter proceeded to California-mandated attorney fee arbitration, and the

arbitrator ordered repayment of the fees.  *Scheer*, 819 F.3d at 1208.  When the debtor

failed to comply, the President Arbitrator sued the debtor in state bar court, resulting in

an order suspending the debtor's law license until she returned the unearned fees.

*Scheer*, 819 F.3d at 1208.  The Ninth Circuit Court of Appeals ultimately held that the

arbitration award was a dischargeable obligation constituting compensation for actual

loss.  *Scheer*, 819 F.3d at 1211.  In distinguishing *Kelly*, the court concluded that the

"unique concerns of state criminal proceedings and . . . pre-Bankruptcy Code practices"

motivating the *Kelly* decision were not present.  *Scheer*, 819 F.3d at 1211.

The Debtor also cites *In re Rashid*, where the Third Circuit Court of Appeals held

a federal restitution order dischargeable because it did not implicate the federalism

concerns contemplated in *Kelly*. *Rashid*, 210 F.3d at 207–08. Insofar as it involves a federal restitution order, *Rashid* has limited applicability here, especially considering *In re Thompson*, 418 F.3d 363 (3d Cir. 2005), where the Third Circuit Court of Appeals relied on *Kelly* to hold a state criminal restitution order non-dischargeable. *See, Thompson*, 418 F.3d at 368 ("Notwithstanding that in practical terms Thompson's restitution payments are "payable to" [the victim], *Kelly* dictates that we not interfere with New Jersey's criminal restitution order.").

Debtor's substantive argument[10] relies most heavily on *Heitmanis v. Rayes*, where the Bankruptcy Court for the Eastern District of Michigan concluded a state criminal restitution order was dischargeable based on the intended distribution of the payments to the victim, rather than a governmental unit. *Rayes*, 496 B.R. at 453–55. The *Rayes* court found *Kelly's* holding to be "materially and unnecessarily beyond its facts, and to that extent at least, [it] may well be seen as dicta." *Rayes*, 496 B.R. at 454.

Addressing the *Rayes* decision and its mention of dicta, the Bankruptcy Court for the Southern District of New York observed in the *Caisse* decision, "[w]e are to give great weight to the Supreme Court's considered dicta in limning the breadth of situations its decisions govern." *Caisse*, 568 B.R. at 19 (alteration in original)(quoting *Thompson*, 418 F.3d at 366). Moreover, as additionally noted in *Caisse,* the District Court for the Eastern District of Michigan later disregarded the *Rayes* holding. As the *Caisse* court explains:

> The *Rayes* court's reasoning was rejected three years later by its own District Court in *Auto-Owners Ins. Co. v. Smith (In re Smith)*, 547 B.R. 774 (E.D. Mich. 2016). There, the debtor pleaded guilty to assault and battery arising from a "road rage" incident. The criminal judgment included a

---

10      Specifically, the Debtor argues, "For all the dicta of the Court in Kelly the holding boils down to the Court's conclusion that "*the relevant portion of § 523(a)(7) protects from discharge any debt to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss.*"" ECF No. 112 (emphasis in original).

restitution order payable to the county clerk, who would in turn distribute funds to the victim and her insurer as compensation for losses they had incurred. The debtor filed for bankruptcy and sought a declaration that the restitution judgment was discharged. The Bankruptcy Court denied the insurer's motion for summary judgment because the judgment was not payable for the benefit of a governmental unit and was compensation for a pecuniary loss.

The District Court reversed. After reviewing the *Kelly* decision and its grounding in the historic judicial exception to discharging criminal restitution and the principles of federalism, the District Court first concluded that *Hughes v. Sanders* was "neither applicable nor instructive" because it dealt with civil rather than criminal restitution. Furthermore, under *Kelly*, a state criminal restitution judgment is not dischargeable even if it is ultimately payable to a non-governmental victim and is intended to compensate the victim for her pecuniary loss. *Kelly* means that all state criminal restitution judgments are non-dischargeable. *See [Smith]*, 547 B.R. at 779; *accord Colton v. Verola (In re Verola)*, 446 F.3d 1206, 1209 (11th Cir. 2006), *cert. denied*, 549 U.S. 885 (2006); *[In re] Sokal*, 170 B.R. [556,] 559 ("The import of *Kelly v. Robinson* is that the Bankruptcy Code's dischargeability provisions are not intended to interfere with state criminal sentencing procedures. Judgments of restitution, regardless of how they are computed, are penal and dischargeable under 11 U.S.C. § 523(a)(7).").

*Caisse*, 568 B.R. at 18 (some internal citations omitted).

In sum, I am not persuaded by the authority cited by the Debtor that *Kelly* does not control the outcome here. None of the decisions cast doubt on *Kelly's* enduring applicability to state criminal restitution orders; instead, each found *Kelly's* underpinnings unrelated to civil proceedings, attorney fee arbitration proceedings,[11] and federal criminal proceedings, respectively. Regarding *Rayes*, the Bankruptcy Court for the Southern District of New York's analysis in *Caisse* is more aligned with the *Kelly* decision and the consensus reached by *Kelly's* progeny. The fact remains that a state criminal court

---

[11] Notably, two bankruptcy courts have concluded that an order of restitution entered in an attorney disciplinary proceeding in favor of a client security fund is a non-dischargeable obligation. *See, Comm. of Va. ex rel. Va. State Bar v. Young (In re Young)*, 577 B.R. 227, 232 (Bankr. W.D.Va. 2017)(holding that debt owed to Virginia State Bar in the amount paid out of Virginia State Bar Client Protection Fund to the debtor's former clients was non-dischargeable); *Supreme Court of Ohio v. Bertche (In re Bertche)*, 261 B.R. 436, 438–39 (Bankr. S.D. Ohio 2000)("[T]his Court concludes that the obligations to reimburse the Clients' Security Fund . . . [is] nondischargeable under § 523(a)(7) as the statute is broadly construed in *Kelly*.").

14

ordered the Debtor to pay restitution after he pleaded guilty to the crime of larceny.[12]

Under *Kelly*, restitution is not compensation for actual pecuniary loss, irrespective of how

the restitution amount is calculated.  The Debtor's argument in this respect is meritless.

   2. The Debtor's Attacks on the Restitution Order

   The Debtor raises two additional contentions about the Restitution Order's

dischargeability.  First, the Debtor asserts that the Restitution Order cannot have the

effect of restitution because the amount fixed did not consider the Debtor's ability to pay,

as required by Conn. Gen. Stat. § 53a-30(a).  The Debtor alternatively posits that the

Restitution Order is invalid because (a) his sentence was complete at the time the

Restitution Order entered, and (b) the Restitution Order entered in favor of the Client

Security Fund, not the victim of the crime.

   The Debtor's arguments about the invalidity of the Restitution Order mirror the

claims he raised before the District Court.  *See Snaider*, 2018 WL 2725447 at *2, *4–5.

In dismissing the Debtor's amended complaint, Judge Hall stated, "[T]o the extent that

[the Debtor's] claim under Count Two argues that the Restitution Order is invalid because

[the Client Security Fund] was not a victim or because the state court failed to hold an

evidentiary hearing or other criminal proceeding, that claim is dismissed with prejudice

under *Rooker-Feldman*."[13]  *Snaider*, 2018 WL 2725447 at *5.  This court agrees and

additionally notes that at no point did the Debtor raise these purported flaws with the state

---

[12]      While the guilty plea and entry of the Restitution Order occurred after the Petition Date in this case, I conclude *Kelly* would compel this result even had the events occurred pre-petition.
[13]      The *Rooker-Feldman* doctrine provides that a federal court lacks subject-matter jurisdiction over the merits of final state court judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005)(holding that the *Rooker-Feldman* doctrine "is confined to . . . cases brought by state-court losers complaining of injuries cause by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments"); *see also Hoblock v. Albany Cty Bd. Of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)(elaborating on *Exxon Mobil*).

appellate court.  The bankruptcy court cannot and will not conduct appellate review of state court orders.

I have considered all other arguments made by the Debtor and find them to be without merit.

## V.        CONCLUSION

For the reasons discussed above, and pursuant to 11 U.S.C. § 523(a)(7) and *Kelly v. Robinson*, 479 U.S. 36 (1986), the Restitution Order is determined to be non-dischargeable.  No violation of the discharge injunction of 11 U.S.C. § 524 has occurred. Accordingly, it is hereby

**ORDERED**: Benson A. Snaider's motion filed as ECF No. 94 is denied.

Dated on December 2, 2019, at New Haven, Connecticut.

*Ann M. Nevins*
United States Bankruptcy Judge
District of Connecticut